IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-HC-2044-FL

THOMAS COVINGTON, JR.,           )
                                 )
            Petitioner,          )
                                 )
    v.                           )            ORDER
                                 )
GEORGE KENWORTHY,                )
                                 )
            Respondent.          )

 

Thomas Covington, Jr. ("petitioner"), a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter came before the court on the motion for summary judgment (DE # 7) pursuant to Federal Rule of Civil Procedure 56 and the motion to submit a supplemental exhibit (DE # 15) of respondent Administrator George Kenworthy ("respondent"). These matters are ripe for adjudication. For the following reasons, the court grants respondent's motions.

## STATEMENT OF CASE

On June 3, 1999, petitioner was convicted in the Columbus County Superior Court of two counts of assault with a deadly weapon with intent to kill inflicting serious injury,[1] two counts of attempted first-degree murder,[2] robbery with a dangerous weapon of victim Lynwood Norris, and

---

[1] One count pertained to victim Lonnie Lynwood Norris and the second pertained to victim Gloria J. Watts-Ray.

[2] One count pertained to victim Lonnie Lynwood Norris and the second pertained to victim Gloria J. Watts-Ray.

conspiracy to commit armed robbery. (Resp't's Mem. Ex. 1, pp. 56-75.) Petitioner was sentenced to the following consecutive terms of imprisonment: (1) 163 to 205 months for each attempted murder; (2) 86 to 113 months for each assault with a deadly weapon with intent to kill inflicting serious injury; (3) 66 to 89 months for the armed robbery; and (4) 29 to 44 months for conspiracy to commit armed robbery. (Id.)

Following his conviction, petitioner, through counsel, filed an appeal to the North Carolina Court of Appeals. See State v. Covington, No. COA00-333, slip op. (N.C. App. July 17, 2001) (unpublished); (Resp't's Mem. Ex. 5.) The court of appeals found no error. Id. On August 20, 2001, petitioner, through counsel, filed a petition for discretionary review in the North Carolina Supreme Court, which was denied on October 4, 2001. State v. Covington, 354 N.C. 222, 554 S.E. 2d 649 (2001).

On September 30, 2002, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Columbus County Superior Court. (Resp.'t's Mem. Ex. 8.) Petitioner then filed a *pro se* "Motion for Disclosure and In Camera Inspection of Court Records." (Id. Ex. 9.) Petitioner's motion for disclosure sought records regarding the "criminal disposition" of drug offenses dated 1998 through 2000 for state's witness Samuel K. Suggs ("Suggs"). (Id.) On April 11, 2003, the Columbus County Superior Court denied petitioner's MAR and denied petitioner's motion for disclosure. (Id. Exs. 10 and 11.)

On June 4, 2003, petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the superior court's April 11, 2003, order denying his MAR. (Id. Ex. 12.) On June 25, 2003, the court of appeals vacated the superior court's April 11, 2003, order in part. (Id. Ex. 13.) Specifically, the court of appeals vacated petitioner's April 11, 2003, MAR as

2

to his ineffective assistance of counsel claims, and remanded the case to the superior court for an evidentiary hearing on those claims. (Id.) The certiorari petition was denied as to petitioner's remaining claims. (Id.) The court of appeals appointed petitioner counsel to represent him at the evidentiary hearing. (Id.)

On April 6, 2004, petitioner, through counsel, filed a pleading captioned "Amendment #2 To Motion for Appropriate Relief," seeking to add a prosecutorial misconduct claim based upon an allegation that the state failed to disclose that it agreed to grant witness Suggs immunity from prosecution in exchange for his testimony. (Id. Ex. 14.) Petitioner also filed a corresponding motion to compel discovery. (Id. Ex. 15.) On February 28, 2005, the superior court held a hearing on petitioner's motion to compel. (Id.) Following the hearing, the superior court judge issued an order denying petitioner's motion to compel and found that petitioner's amendment to his MAR was procedurally barred due to his failure to raise it on direct appeal in his first MAR. (Id. Ex. 15.) Petitioner, thereafter, filed a petition for a writ of certiorari in the North Carolina Court of Appeals, seeking review of the superior court's denial of his "Amendment #2." (Id. Ex. 18.) The court of appeals denied petitioner's certiorari petition on July 14, 2008. (Id. Ex. 20.)

In the interim, on August 4, 2004, petitioner filed a second *pro* se MAR in the superior court. (Id. Ex. 21.) Petitioner thereafter filed a *pro se* petition for a writ of habeas corpus in the North Carolina Court of Appeals on September 20, 2007, which was denied on September 21, 2007. (Id. Exs. 27 and 28.) Then, on December 11, 2007, petitioner filed an amendment to his August 4, 2004, *pro se* MAR. (Id. Ex. 22.) On February 8, 2008, the superior court found that petitioner's amendment to his *pro se* MAR was procedurally barred and that his *pro se* MAR was procedurally barred. (Id. Ex. 23.) On February 25, 2008, petitioner filed a *pro* se petition for a writ of certiorari

3

in the court of appeals seeking review of the superior court's February 8, 2008 order, which was denied on March 11, 2008. (Id. Exs. 24 and 26.)

Also in the interim, on March 24, 2006, petitioner, through counsel, filed a pleading captioned "Amendment # 3" to his MAR, in which petitioner again attempted to raise his claim that the state failed to disclose an alleged deal of immunity made with witness Suggs. (Id. Ex. 16.) On March 18, 2009, the superior court denied petitioner's motion to amend on the grounds that his MAR already had been ruled upon. (Id. Ex. 17.)

On March 30, 2009, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Court of Appeals seeking review of the superior court's orders denying his prosecutorial misconduct claim. (Id. Ex. 29.) On April 13, 2009, the court of appeals denied petitioner's certiorari petition. (Id. Ex. 31.) On April 20, 2009, petitioner filed a *pro se* motion to vacate in the court of appeals, which was denied on May 7, 2009. (Id. Ex. 32.)

During the August 24, 2009, criminal session of court in the Columbus County Superior Court, the superior court judge held an evidentiary hearing on petitioner's ineffective assistance of trial counsel claims brought in his first MAR. (Id. Ex. 33.) On November 16, 2009, the superior court entered an order finding that petitioner's ineffective assistance of counsel claims were meritless. (Id.)

On February 16, 2010, petitioner filed a *pro se* petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the superior court's November 16, 2009, order. (Id. Ex. 34.) On March 4, 2010, the court of appeals denied petitioner's February 16, 2010, certiorari petition. (Id. Ex. 36.)

4

On March 18, 2010, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges the following: (1) prosecutorial misconduct; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. Respondent filed a motion for summary judgment on August 19, 2010, arguing that petitioner's claims are without merit. Petitioner responded to respondent's motion for summary judgment on September 13, 2010. On September 30, 2010, respondent filed a motion to submit supplemental exhibits.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> On 23 November 1994, Thomas Covington, Jr. (defendant), Aaron Campbell (Campbell), and John Singleton (Singleton) robbed the Norris County Store in Columbus County, North Carolina. Prior to the night of the robbery, the three discussed a plan to rob the store. On the evening of the 23rd, Campbell drove Singleton and the defendant to the store. Defendant entered the store to check for security cameras and upon discovering that there were none, the three men again discussed their plan to rob the store that night. In preparation, Campbell wiped the guns and bullets to be used in the robbery for fingerprints, reloaded the guns, and returned the guns to defendant and Singleton. Campbell then dropped Singleton and defendant off near the store and proceeded to the designated post-robbery meeting point.
>
> Defendant and Singleton approached Norris' store outfitted in ski masks and camouflage; defendant was armed with a .22 revolver and Singleton with a .25 automatic. The two men encountered Tommy Boswell (Boswell), a store employee, as he walked out of the store. One of the men pointed a gun at Boswell, who surrendered his wallet before being lead into the store at gunpoint.
>
> Inside the store, Lynwood Norris, the owner of the store testified that he heard a male voice say, 'This is a mother f- - -ing god-d- - - hold-up. Give me all your money.' Norris turned around and was "bumped" in the head with a handgun. Jeaneen Watts-Ray (Watts-

5

Ray), a store clerk, testified that a person wearing a ski mask and carrying a revolver pointed the gun at Mr. Norris and pulled the trigger, but the gun did not go off. As Mr. Norris took the money out of the register and reached for his gun, Singleton started shooting. Both Norris and Watts-Ray were shot during the course of the robbery. Norris was shot four times resulting in the removal of a portion of his liver, and Watts-Ray was shot once in the face.

After the robbery, Campbell and Singleton drove back to Campbell's uncle's house, disposing of the .25 automatic and a sweatshirt while in route. The next morning, the three men met at Campbell's house and divided the money taken at the robbery. Campbell testified that defendant told him that during the robbery, he tried to shoot the gun, but it would not fire. Campbell later deduced that he must have put the bullets in backwards after cleaning them, which caused the gun to misfire.

Covington, No. COA00-333, slip op. (N.C. App. July 17, 2001) (unpublished) and (Resp't's Mem. Ex. 5.)

## DISCUSSION

A.    Motion to Submit Supplemental Exhibit

Respondent requests permission to supplement the record with the transcript from petitioner's August 24, 2009 evidentiary hearing in the Columbus County Superior Court. Respondent states that he was unable to file the transcript at the time he filed his motion for summary judgment because it was not available. For good cause shown, respondent's motion is GRANTED.

B.    Motion for Summary Judgment

1    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden

6

of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

7

does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a

determination of a factual issue made by a state court is presumed correct, unless rebutted by clear

and convincing evidence. See 28 U.S.C. § 2254(e)(1).

    2.     Analysis

    a.     Prosecutorial Misconduct

In his first claim, petitioner argues that the state violated his rights pursuant to Brady v.

Maryland, 373 U.S. 83 (1963), because it failed to disclose state's witness Samuel K Suggs'

("Suggs")[3] plea agreement prior to trial. Petitioner also asserts that the prosecutor allowed Suggs

to provide false testimony at trial regarding his lack of plea agreement.

Respondent argues that this claim is procedurally defaulted. Under the doctrine of procedural

default, a federal court is precluded from reviewing the merits of any claim that was found to be

procedurally barred by the state court on adequate and independent state grounds. Coleman v.

Thompson, 501 U.S. 722, 731-32 (1991). However, procedurally defaulted claims can be reviewed

by a federal habeas court if the petitioner demonstrates cause and prejudice, or that the failure to

consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

---

[3] Suggs was in the same cell block with petitioner at the Columbus County Jail. (Tr. Vol. 3, p. 564.) Prior to petitioner's trial, Suggs contacted the District Attorney's office and told prosecutors that he had information regarding petitioner's case. (Id. p. 566.) Suggs then testified at petitioner's trial regarding statements petitioner allegedly made to him, in the Columbus County Jail, regarding the November 23, 1994, incident at the Norris Country Store in Columbus County. (Id. pp. 564-574.)

8

Petitioner did not raise this claim in his first MAR. Rather, petitioner first raised this claim when his counsel filed his pleading captioned "Amendment # 2" on April 6, 2004. (See Resp't's Mem. Ex. 14.) On March 9, 2005, the superior court found that petitioner's April 6, 2004 amendment was procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(1)[4] because he could have raised the issue in his first MAR, but failed to do so. (Id. Ex. 15.) The procedural bar rule of N.C. Gen. Stat. § 15A-1419(a) is an independent and adequate state ground precluding federal habeas review. See Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998), cert. denied, 525 U.S. 1155 (1999); Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998), cert. denied, 525 U.S. 1150 (1999). Therefore, petitioner's claim is procedurally defaulted, and the court is precluded from reviewing this claim unless petitioner can demonstrate cause and prejudice for his procedural default.

Petitioner contends he is able to overcome the procedural default because he is able to establish cause and prejudice. As grounds for cause, petitioner asserts that he was unable to raise this ground in his original MAR because he did not have evidence to support his prosecutorial misconduct claims at the time he filed his first MAR. However, the evidence in the record belies this assertion. In particular, the evidence in the record demonstrates that petitioner filed a motion for disclosure on February 20, 2003 in the Columbus County Superior Court in which he requested a copy of Suggs' criminal dispositions for his drug offenses. (Resp't's Mem. Ex. 9.) Petitioner's request for a copy of Suggs' criminal dispositions indicates that he had knowledge that Suggs had entered into a plea agreement with the state to resolve his drug offenses. His motion for disclosure

---

[4] N.C. Gen. Stat. § 15A-1419(a)(1) reads in pertinent part: "the following . . .[is a] ground[] for the denial of a motion for appropriate relief, including motions filed in capital cases: (1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."

9

was filed prior to the superior court's April 11, 2003 disposition of his original MAR, but he did not

pursue his prosecutorial misconduct claim until after the disposition of his original MAR. Because

the evidence in the record demonstrates that he had notice of the facts giving rise to his alleged

prosecutorial misconduct claim prior to the adjudication of his original MAR, he is unable to use

lack of knowledge as a ground for cause to excuse his procedural default. Thus, petitioner has not

adequately stated cause for his procedural default.

The court next examines whether petitioner is able to establish prejudice. To establish

prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 592 (4th Cir. 2000)

(citations omitted). Petitioner has not presented any evidence, outside of conclusory allegations, to

demonstrate prejudice necessary to overcome procedural default. See Nickerson v. Lee, 971 F.2d

1125, 1136 (4th Cir. 1992), abrogated on other grounds by Yeatts v. Angelone, 166 F.3d 255 (4th

Cir. 1999) ("In order to obtain an evidentiary hearing on an ineffective assistance claim—or for that

matter on any claim—a habeas petitioner must come forward with some evidence that the claim

might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an

evidentiary hearing."); see also Bunch v. Thompson, 949 F.2d 1354, 1364 (4th Cir. 1991) ("The best

course for a federal habeas court is to credit [defense counsel with] plausible strategic judgments").

The record reflects that Suggs was cross-examined at petitioner's trial about the possibility of

receiving concessions for his drug charges in exchange for his testimony. Suggs stated that he had

not been promised any particular treatment by the District Attorney, but that he was hopeful that he

would receive a deal in exchange for his testimony. (Pet.'s Resp. Ex. 15 pp. 1-4.) Accordingly, the

10

jury heard testimony that Suggs expected favorable treatment in exchange for his testimony at petitioner's trial. Under these circumstances, any prejudice from the alleged undisclosed deal would be minimal and would not infect the entire trial. Thus, petitioner is unable to demonstrate prejudice. Because petitioner is unable to demonstrate cause or prejudice, this claim is procedurally defaulted.

Even if petitioner's claim was not procedurally defaulted, he would not be entitled to relief because his claim is meritless. A Brady claim has the following three essential elements: "(1) the evidence must be favorable to the accused; (2) it must have been suppressed by the government, either willfully or inadvertently; and (3) the suppression must have been material, i.e., it must have prejudiced the defense at trial." Monroe v. Angelone, 323 F.3d 286, 299-300 (4th Cir. 2003) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

In this case, petitioner cannot establish the first element of a Brady claim because he has not proffered any evidence that the state entered into a formal plea agreement with Suggs prior to trial. The only evidence petitioner relies upon to support his prosecutorial misconduct claim is an excerpt from his trial transcript in which Suggs testified that he is hopeful that he will get concessions from the state in exchange for his testimony at petitioner's trial. (Pet.'s Resp. Ex. 15 pp. 1-4.) This does not prove petitioner's claim that the state failed to disclose a plea agreement. Likewise, petitioner has not presented any evidence to demonstrate that the prosecutor allowed Suggs to present false testimony at petitioner's trial. As stated, unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. See Nickerson, 971 F.2d at 1136.

The evidence in the record also demonstrates that petitioner is unable to establish the third element of the Brady test, i.e., that the evidence allegedly suppressed was material. The state has a constitutional duty to disclose to a criminal defendant evidence which is material to the proof of

11

innocence or guilt, pursuant to the Supreme Court's ruling in Brady. Brady, 373 U.S. at 87. "[E]vidence . . . is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985) (quotation omitted).

As stated, the evidence in the record demonstrates that petitioner's counsel cross-examined Suggs at petitioner's trial about the possibility of receiving concessions for his drug charges in exchange for his testimony. Suggs stated that he had not been promised any particular treatment by the district attorney, but that he was hopeful that he would receive a deal in exchange for his testimony. (Pet.'s Resp. Ex. 15, pp. 1-4.) Accordingly, the jury heard testimony regarding the fact that Suggs hoped for favorable treatment in exchange for his testimony. Additionally, petitioner has not presented any evidence to demonstrate a reasonable probability that evidence regarding the alleged plea agreement would have changed the outcome of the trial. Thus, evidence regarding the alleged plea agreement and its alleged concealment was not material. Because petitioner is unable to establish the first or third elements of the Brady test, his Brady claim is without merit.

      b.    Ineffective Assistance of Trial Counsel

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight."

12

Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 687. For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Sexton v. French, 163 F.3d 874, 882 (1998).

### i.    Failure to Interview Witnesses

In his first ineffective assistance of counsel claim, petitioner alleges that his counsel was ineffective because he failed to interview two witnesses, Denise Gore ("Gore") and Dwight Hall ("Hall"). Petitioner argues that Gore and Hall would have refuted Campbell's testimony, at petitioner's trial, that he picked petitioner up from his home on the day of the robbery, and that he and petitioner sold drugs and smoked marijuana until they committed the robbery. Petitioner raised this claim in his first MAR. The MAR court conducted an evidentiary hearing on this claim, and found it to be without merit.

At the conclusion of the evidentiary hearing, the MAR court made the following pertinent findings of fact:

> 21.    That Mr. Kirby[5] discussed potential defense witnesses with the defendant prior to trial and made reasonable attempts to contact each such potential witness and is unaware of any significant potential witness that he was not able to personally speak to.

---

[5] Mr. Albert David Kirby, Jr. represented petitioner during petitioner's criminal trial. Mr. Kirby testified as to his representation of petitioner at petitioner's August 24, 2009 evidentiary hearing. (Resp't's Ex. 33.)

22.   That Mr. Kirby and the defendant discussed the potential of calling Ms. Catherine Denise Lacy (Gore) as a witness.

23.   That the defendant requested that Ms. Lacy not be called to testify.

24.   That Ms. Catherine Denise Lacy (Gore) was called to testify during the evidentiary hearing.

25.   That Ms. Lacy confirmed that she had in fact spoken with Mr. Kirby prior to the defendant's trial.

32.   That prior to trial Mr. Kirby discussed possible impeachment strategies in regards to a Mr. Campbell, a co-defendant who would be testifying against the defendant.

34.   That the defendant did not request for Mr. Kirby to call any witnesses after the trial of his case had started.

(Resp't's Mem. Ex. 33.)

The MAR court also made the following conclusions of law at the end of petitioner's evidentiary hearing:

1.   That the defendant was represented by competent counsel, who afforded him effective, reasonable, and professional representation throughout the proceedings.

2.   That the[] allegation that the defendant was prejudiced by not having certain witnesses testify in his trial is without merit. The North Carolina Court of Appeals has previously rejected this argument as a ground for asserting ineffective assistance of counsel. See *State v. Taylor*, 79 N.C. App. 635, 339 S.E.2d 856, *disc. review denied,* 317 N.C. 340, 346 S.E.2d 146 (1986).

3.   The decisions on what witnesses to call, whether and how to conduct cross-examination, . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client. Trial counsel are necessarily given wide latitude in these matters. *State v. Milano*, 297 N.C. 485, 495 256 S.E.2d 154, 160 (1979)

14

(citations omitted), *overruled on other grounds by State v. Grier*, 307 N.C. 628, 300 S.E.2d 351 (1983).

4.  To establish ineffective assistance of counsel, the defendant must satisfy the two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985). The first prong of that test as it relates to both trials and guilty pleas is that a defendant must first show that counsel's performance fell below an objective standard of reasonableness. The second prong of that test, when applied to trials, requires that a defendant show that the deficient performance prejudiced the defense. This requires showing that trial counsel's errors were so serious as to deprive the defendant of a fair trial. The defendant has failed to satisfy either of the tests required in *Strickland*.

(Id.)

Based upon the findings by the MAR court, Mr. Kirby's testimony establishes that he discussed potential witnesses with petitioner and made reasonable attempts to contact each potential witness. The evidence in the record also establishes that petitioner specifically requested that Gore not be called as a witness at his trial, and that petitioner agreed not to call any witnesses at his trial. Based upon these factual findings, the MAR court found that petitioner was not able to establish either prong of the Strickland test for ineffective assistance of counsel.

The factual findings of the MAR court are entitled to a presumption of correctness. Lewis v. Wheeler, 609 F.3d 291, 301 (4th Cir. 2010). Petitioner has the burden to rebut this presumption by clear and convincing evidence. Id.; 28 U.S.C. § 2254(e)(1). In this case, petitioner has not presented any evidence to establish how the testimony of Gore or Hall would have been relevant at trial. Rather, petitioner merely presents unsupported allegations that his counsel was ineffective for failing to interview these witnesses. These unsupported allegations do not warrant relief. See Nickerson, 971 F.2d at 1136. Accordingly, the record establishes that petitioner cannot rebut the

15

MAR court's factual finding that his counsel made reasonable attempts to contact each potential witness, that he requested that Gore not be called as a witness, and that he agreed not to call any witnesses at trial.

Based upon the foregoing, the MAR court's adjudication of this ineffective assistance of counsel claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, respondent is entitled to summary judgment for petitioner's first ineffective assistance of counsel claim.

### ii.  Failure to Cross Examine Witness Campbell

In his second ineffective assistance of counsel claim, petitioner alleges that his counsel was ineffective for failing to cross-examine Campbell about his testimony at petitioner's trial that the revolver misfired because Campbell placed the bullets in backwards. Petitioner raised this claim in his first MAR. The MAR court conducted an evidentiary hearing, and found this claim to be without merit.

Petitioner argues that his trial counsel was ineffective because Campbell's testimony was considered "the truth" and his statements were used to support the charges of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The MAR court found as a fact that "prior to trial Mr. Kirby discussed possible impeachment strategies in regard to a Mr. Campbell, a co-defendant who would be testifying against the defendant." (Resp't's Mem. Ex. 33, p. 5 ¶ 32.) The MAR court stated that the decision on how to conduct cross-examination is the exclusive province of the lawyer after consultation with his client, and that trial counsel are given wide latitude in these matters. (Id. Ex. 33, p. 5 ¶ 3) (citing Milano, 256 S.E.2d at 160.). The MAR

16

court further found that petitioner had not established either prong of the <u>Strickland</u> ineffective assistance of counsel test for this claim. (<u>Id.</u> Ex. 33, p. 5, ¶ 4.)

Petitioner does not state in his petition how cross-examining Campbell about loading the revolver would have made a difference at his trial. Additionally, the transcript of petitioner's trial reveals that his counsel conducted a thorough cross-examination Campbell. (Tr. pp. 576-579.) Moreover, petitioner has not provided any evidence to rebut the MAR court's finding that this ineffective assistance of counsel claim is without merit. Instead, petitioner's allegation is nothing more than a conclusory claim of malfeasance of counsel with no supporting facts. Bare conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. <u>Nickerson</u>, 971 F.2d at 1136. Accordingly, petitioner has not presented any evidence to demonstrate that his counsel's conduct was objectively unreasonable or that the outcome of the proceedings would have been different if his counsel had questioned Campbell about loading the gun. Hence, petitioner has not demonstrated that the MAR court's denial of his ineffective assistance of counsel claim constituted an unreasonable determination of the facts or a decision contrary to, or involving an unreasonable application of Supreme Court precedent. Therefore, respondent is entitled to summary judgment for petitioner's ineffective assistance of trial counsel claim based upon counsel's alleged failure to cross-examine Campbell regarding his loading the revolver.

iii.     Failure to Request Jury Instruction

In his third ineffective assistance of counsel claim, petitioner argues that his counsel was ineffective because he failed to request a jury instruction based upon attempted second-degree murder. Petitioner raised this claim in his first MAR. The MAR court conducted an evidentiary hearing for this claim, and found it to be without merit.

17

At the conclusion of the evidentiary hearing, the MAR court found the following:

30.  That Mr. Kirby, after consulting with the defendant, did not request that an instruction for attempted second degree murder be given to the jury.

31.  That it would have been error for the court to have given an instruction as to attempted second degree murder, and therefore no error could have occurred as a result of Mr. Kirby's decision not to request such an instruction.

(Resp't's Mem. Ex. 33. p. 2.)

In support of his ineffective assistance of counsel claim, petitioner states that he asked his counsel to request a jury instruction for attempted second degree murder. Petitioner further states that his counsel admitted at the evidentiary hearing before the MAR court that petitioner requested such an instruction. However, the MAR court's factual findings support the opposite conclusion, i.e., that petitioner and his counsel discussed the issue and decided not to pursue a attempted second-degree murder instruction. The factual findings of the MAR court are entitled to a presumption of correctness. Lewis v. Wheeler, 609 F.3d 291, 301 (4th Cir. 2010). Petitioner has the burden to rebut this presumption by clear and convincing evidence. Id.; 28 U.S.C. § 2254(e)(1). The record establishes that petitioner cannot rebut this presumption. Accordingly, the MAR court's adjudication of this ineffective assistance of counsel claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, petitioner's third ineffective assistance of counsel claim is without merit.

18

c.     Ineffective Assistance of Appellate Counsel

In his third claim, petitioner alleges that he received ineffective assistance of appellate counsel. Respondent contends this claim is procedurally defaulted. As stated, under the doctrine of procedural default, a federal court is precluded from reviewing the merits of any claim that was found to be procedurally barred by the state court on adequate and independent state grounds. Coleman, 501 U.S. at 731-32. However, procedurally defaulted claims can be reviewed by a federal habeas court if the petitioner demonstrates cause and prejudice, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner did not raise this claim until he filed his December 11, 2007, amendment to his second *pro se* MAR. (See Resp't's Mem. Ex. 22.) On February 8, 2008, the superior court found that petitioner's December 11, 2007 amendment was procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(1) because he could have raised the issue in his prior MAR, but failed to do so. (Id. Ex. 23.) The procedural bar rule of N.C. Gen. Stat. § 15A-1419(a) is an independent and adequate state ground precluding federal habeas review. See Williams, 146 F.3d at 209. Therefore, petitioner's claim is procedurally defaulted, and the court is precluded from reviewing this claim unless petitioner can demonstrate cause and prejudice for his procedural default.

Petitioner contends he is able to overcome the procedural default because he is able to establish cause and prejudice. As grounds for cause, petitioner asserts that he was unable to raise this ground in his original MAR because he lacked access to the courts. In support of this argument, petitioner states that he did not understand how to argue a claim based upon insufficient evidence. Petitioner further states that North Carolina Prisoner Legal Services ("NCPLS") refused to represent him, and that North Carolina does not have available law libraries in its prisons. However, petitioner

19

may not rely upon NCPLS' alleged ineffectiveness or his own lack of legal knowledge to establish cause for his procedural default because the Sixth Amendment does not provide a right to counsel for post-conviction proceedings. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (stating that "[ineffective assistance of counsel] claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."); Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997) ("Because [petitioner] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate cause to excuse the procedural default of his claims that his . . . appellate counsel were constitutionally ineffective."); Martin v. Johnson, No. 7:05CV00091, 2005 WL 1459717, *3 (W.D. Va. June 4, 2005) (unpublished) (citing Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999)), appeal dismissed, 155 Fed. Appx. 695 (4th Cir. Nov. 30, 2005) (unpublished). Based upon the foregoing, petitioner has not adequately stated a ground for cause to excuse his procedural default.

The court next examines whether petitioner is able to establish prejudice. To establish prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver, 221 F.3d at 592. Petitioner has not presented any evidence, outside of conclusory allegations, to demonstrate prejudice necessary to overcome procedural default. See Nickerson, 971 F.2d at 1136 ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") Petitioner is unable to demonstrate prejudice. Because petitioner is unable to demonstrate cause or prejudice, this claim is procedurally defaulted.

Even if this claim was not procedurally defaulted, petitioner's ineffective assistance of appellate counsel claim is without merit. As stated, the Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland, 466 U.S. at 686. To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687-88). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F. 2d 1560, 2568 (4th Cir. 1993).

The court next will determine the likelihood that petitioner would have prevailed on the merits of his sufficiency of the evidence claim on appeal. The standard of review for a claim of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). In order to convict a defendant of assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b), the state must show: (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; (4) not resulting in death. See State v. Aytche, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990). Additionally, petitioner was convicted pursuant to a theory of acting in concert. To act in concert with others to commit a crime, "[i]t is not necessary for the defendant to do any particular act constituting at least part of a crime . . . so long as he is present at

21

the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime . . ." State v. Begley, 323 S.E.2d 56, 57-58 (1984).

The evidence in the record shows that petitioner entered the Norris Country Store in Columbus County with a .22 revolver. Covington, No. COA00-333, slip op. at 1.-3. Once inside the store, "Lynwood Norris, the owner of the store testified that he heard a male voice say, 'This is a mother f- - -ing god-d- - - hold-up. Give me all your money.' Norris turned around and was 'bumped' in the head with a handgun. Jeaneen Watts-Ray (Watts-Ray), a store clerk, testified that a person wearing a ski mask and carrying a revolver pointed the gun at Mr. Norris and pulled the trigger, but the gun did not go off." Id. Moreover, the evidence establishes that both Norris and Watts-Ray were shot during the course of the robbery. Norris was shot four times resulting in the removal of a portion of his liver, and Watts-Rey was shot once in the face. Id.

The court finds that, viewing the evidence presented at trial in the light most favorable to the state, there was substantial evidence presented as to petitioner's use of the gun for a reasonable mind to conclude that he used the gun as a deadly weapon when he assaulted Norris with his revolver.[6] Moreover, at a minimum, there is sufficient evidence to demonstrate that petitioner, acting in concert with his co-defendants, committed assault with a deadly weapon with intent to kill inflicting serious injury. Petitioner has not presented any evidence to the contrary. Accordingly, petitioner has not demonstrated that his appellate counsel's representation was objectively unreasonable or that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Thus, respondent is entitled to summary judgment for petitioner's third claim.

---

[6] To the extent petitioner argues that his revolver is not a deadly weapon because it did not go off when it was fired, this argument is without merit because a pistol is a deadly weapon *per se.* State v. Powell, 238 N.C. 527, 78 S.E.2d 248 (1953); State v. Washington, 142 N.C. App. 657, 544 S.E.2d 249, 252 (2001).

C.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

23

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, respondent's motion to submit a supplemental exhibit (DE # 15) and motion for summary judgment (DE # 7) are GRANTED. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the $7$ day of March, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

24